United States District Court
Southern District of Texas
**ENTERED**
February 23, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| REGINALD PETERS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-60 |
| | § | |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Reliance Standard Life Insurance Company's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6). Dkt. 8. This case stems from Reliance's decision to discontinue long-term disability payments to Peters. It did so after learning that Peters had entered a settlement agreement ("Agreement") with his employer. The Agreement allegedly released his employer and its insurers from liability. Peters claims that the Agreement did not release Reliance from its responsibility to continue paying disability benefits. For the reasons that follow, the Court **GRANTS** the motion to dismiss.

### I. Statement of the Undisputed Facts

The undisputed facts, in the light most favorable to plaintiff as the non-moving party, are as follows. Reginald Peters ("Peters") was employed with Averitt Express, Inc. ("Averitt"). Peters obtained disability insurance with the defendant, Reliance Standard Life Insurance Company ("Reliance"), through his employment with Averitt. In 2011, Peters sustained injuries when he was struck by a tractor-trailer driven by another Averitt

employee.  Averitt was not a subscriber to the Texas Workers' Compensation System.
Peters brought a suit in negligence against Averitt in the 152nd Judicial District Court of
Harris County, Texas.  Pursuant to this litigation, Peters and Averitt entered into the
Agreement in which Peters received $2,500,000 in exchange for releasing Averitt from
any future liability.

## A.  The Agreement

The following sections of the Confidential Settlement, Indemnity and Release
Agreement are relevant to this case:

### I. Definitions

. . . .

**B.**    "Releasees" means Averitt Express, Inc. and Averitt Properties
Texas, L.P., and all of their past, present and future, affiliated, related,
successor, predecessor, subsidiary and parent companies and corporations,
and with respect to each of the foregoing, their contractors, subcontractors,
joint venturers, partners, officers, directors, shareholders, agents,
representatives, employees, attorneys, insurers and indemnitors
(specifically including, but not limited to, Lexington Insurance Company,
American International Group, Inc.), and all parties in privity therewith.

. . . .

### III. General Release

1.   Releasors, in exchange for the Consideration . . . do fully and
finally RELEASE, ACQUIT and FOREVER DISCHARGE Releasees of
and from any and all past, present and future claims, suits, demands,
liabilities, damages, debts, dues, liens, actions, and/or causes of action of
whatsoever nature, known or unknown, accrued or unaccrued, foreseen or
unforeseen, proximate or remote, whether permanent, temporary or
residual, whether in law, in equity, in admiralty, in tort, in contract, by
statute or otherwise, including, but not limited to, all: . . . long term
disability benefits . . . any insurance policy . . . and any and all other
damages or other items of possible recovery whatsoever to which Releasors
may be or might be entitled at the time of this Agreement, arising out of,
resulting from, or that are in any way related, directly or indirectly, to the
Incident, Reginald Peters' employment with Averitt Express, Inc., and/or
the Lawsuit.

. . . .

6.  Releasors acknowledge, understand and agree that by accepting the Consideration they may be waiving rights to benefits such as social security, death and/or disability, Medicare and/or Medicaid benefits, whether provided by . . . any insuring company, providing health, hospitalization, disability or other insurance payments or benefits. Releasors agree and understand that by entering into this Agreement they are releasing any and all claims against the Releasees related in any way to the aforementioned benefits. . . .

. . . .

### VI.  Representations and Warranties

. . . .

3.  Plaintiffs Reginald and Joyce Peters represent and warrant that they are executing this Agreement on their own judgment and upon advice of counsel of their own choosing.

. . . .

10.  Plaintiffs Reginald and Joyce Peters represent and warrant that this Agreement is fully and forever binding on Releasors.

11.  Plaintiffs Reginald and Joyce Peters represent and warrant that they have not filed and are not a party to any lawsuits, claims or other legal proceedings arising out of, or related, directly or indirectly, to the Incident other than [this] suit . . . .

. . . .

### X.  Choice of Law

This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.

Dkt. 8-2.

## B.  The Instant Lawsuit

Reliance had paid Peters long-time disability benefits as required by the policy. However, Reliance ceased payments when it learned of the Agreement.  When the payments stopped, Peters brought the instant suit against Reliance.  Dkt. 1.  According to Peters, Reliance's decision to cease paying long-term disability benefits: 1) was improper; 2) was improperly motivated by an attempt to avoid its obligations to pay

benefits; and 3) interfered with his right to receive disability benefits.  *Id*.  The Complaint therefore asserted causes of action for: 1) denial of benefits; 2) breach of fiduciary duty; and 3) interference, seeking damages and injunctive relief.  *Id*.

In its motion to dismiss, Reliance argues that Peters released it from any obligation to continue paying long-term disability benefits when he entered into the Agreement with Averitt.  Dkt. 8.  Its motion to dismiss points to language in the Agreement that 1) names Averitt's 'insurers' as Releasees; and 2) discharges all Releasees from—*inter alia*—long-term disability or insurance claims.  *Id*.  Peters counters that Reliance was not a party to the Agreement, which did not specifically name Reliance as a Releasee—although it did expressly identify several other insurers of Averitt.  Dkt. 9.

Through the Complaint, the motion to dismiss, and the parties' responsive pleadings and filings with the Court, Peters and Reliance disagree on many points of fact and law.  However, two central issues have emerged: 1) the applicable law to apply and 2) whether, under the appropriate law, Peters released Reliance from its obligation to pay disability benefits.

## II.  Standard of Review

### A.  Jurisdiction

The parties agree that the Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and—specifically—the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. 1132(e)(1).

### B.  Fed. R. Civ. P. § 12(b)(6)

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States,* 536 U.S. 960 (2002).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).   The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ramming*, 281 F.3d at 161.

Rule 12(b)(6) motions to dismiss are "viewed with disfavor and [are] rarely granted." *Arnett v. Aetna Life Ins. Co.,* No. CV H-15-2723, 2016 WL 6883203, at *2 (S.D. Tex. Apr. 14, 2016) (citing *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)). A complaint need not address every potential affirmative defense to survive a motion to dismiss.  *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Texas, Inc.*, No. CIV.A.H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (citing *Hall v. Hodgkins,* 305 F. Appx. 224, 228 n. 1 (5th Cir.2008)).  However, "[a]n exception to this rule may apply if the plaintiff has alleged facts plainly indicating that an affirmative

defense does apply." *Id*. Further, "where facts alleged in Plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b) may be granted." *In re Dynegy, Inc. Securities Litigation*, 339 F. Supp. 2d 804, 819 (S.D. Tex. 2004).

## C.  ERISA Claims

Congress enacted ERISA to regulate employee benefit plans. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Any plan that is "established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death, or unemployment" is governed by ERISA. *See* 29 U.S.C. § 1002(1). The parties agree that the instant claims are governed by ERISA. Though never expressly stated, the Court finds that the Complaint's three causes of action are made pursuant to the following ERISA provisions: 1) 29 U.S.C. § 1132(a)(1)(B) and (3) for denial of benefits; 2) 29 U.S.C. §§ 1104, 1109, and 1132(a)(2) for breach of fiduciary duties; and 3) 29 U.S.C. § 1140 for interference.

The parties further agree that federal common law controls.[1] *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) ("Federal common law controls the interpretation of a release of federal claims.") (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981)). However, the parties disagree whether on-

---

[1] The parties arrived at this agreement circuitously, as Peters initially argued against ERISA controlling (despite relying on ERISA for the Court's subject-matter jurisdiction). He based his argument on the fact that the Agreement never expressly mentioned ERISA. As noted by Reliance, *Chaplin* holds that the Agreement need not specifically mention ERISA in order to preserve a claim under it. *See Chaplin*, 307 F.3d at 373 ("In short, a general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements. The releases therefore cover plaintiffs' claims for ERISA benefits."). Peters later conceded that federal law controls. Dkt. 19.

point federal common law exists—and, if not, whether the Court should turn to state law for guidance.

### III. Discussion

### A. Choice of Law

The parties agree that federal law controls, but disagree whether sufficiently on-point federal common law exists to determine the reach of the Agreement's release. Reliance argues that *Chaplin v. NationsCredit Corp.*, 307 F.3d 368 (5th Cir. 2002) provides sufficient guidance to find that it was released by the Agreement. Peters disagrees. He argues that the facts in *Chaplin* are sufficiently distinguished from the present facts as to preclude reliance on *Chaplin*. Peters avers that no federal common law addresses the following issue: whether a court should enforce a release regarding a non-signee insurer where the agreement releases 'insurers' but does not specifically identify the insurer to be released. Therefore, according to Peters, "courts may look to state law to address issues when the issue is not addressed by federal common law."[2] Dkt. 19. Accordingly, Peters argues that the Court should seek guidance in Texas law.

Peters supports this argument with an Eastern District of Virginia opinion. Dkt. 19 (citing *Davis v. Old Dominion Tobacco Co.*, 755 F. Supp. 2d 682, 692 (E.D. Va. 2010)). The court in *Davis* decided to rely on Virginia state law for guidance in

---

[2] Peters does not argue that the Agreement called for Texas law to govern its interpretation. The Court declines to forward this argument *sua sponte*.

determining whether to enforce a settlement agreement regarding several federal claims.[3]

*Davis* noted that neither ERISA nor the ADA contained provisions governing waiver of claims.  *Id.*  Davis cited to a footnote in Fourth Circuit case addressing the release of Fair Labor Standards Act ("FLSA") claims, stating that "there is no 'generally-applicable body of federal common law principles . . . for determining whether releases of particular federal rights secured by specific provisions of federal law can be enforced,' and courts 'can resolve interstitial questions of federal law . . . by adopting existing state law."  *Id.* (quoting *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 441 n.1 (4th Cir. 1999).

However, the full text of the quote from the Fourth Circuit opinion makes clear that looking to state law is a choice—and one that courts must consider on an individual basis:

> Some federal courts have misleadingly referred to "the federal common law of release."  *See, e.g., Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1481 (6th Cir.1989).  In light of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), such comments must be read to refer not to a generally-applicable body of federal common law principles, but rather to federally-crafted common law rules for determining whether releases of particular federal rights secured by specific provisions of federal law can be enforced. . . .  [C]ourts can resolve interstitial questions of federal law either by formulating a federal common law rule or by adopting existing state law, and that they must choose between these two courses on a statute-by-statute, issue-by-issue basis. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727–29, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

*Kendall*, 174 F.3d at 441 n.1.

---

[3]  These claims included the Americans with Disabilities Act, the Age Discrimination in Employment Act ("ADEA"), and ERISA.  *Id.*

The majority of federal circuits apply a 'knowing and voluntary' standard to determining the validity of a waiver.[4]   Courts apply a heightened scrutiny when examining the waiver of an ERISA claim.   *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1365 (2d Cir. 1991) (ERISA's legislative history and substantive provisions "show that Congress intended 'to protect contractually defined benefits' ") (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989)). The Fifth Circuit "employ[s] a two-step burden-shifting framework to assess a waiver's validity and enforceability[5]."   *Clayton v. ConocoPhillips Co.,* 722 F.3d 279, 292 (5th Cir. 2013) (citing *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015 (5th Cir. 1990) (superseded on other grounds by statute)):

> Once a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. We examine the *totality of circumstances* to determine whether the releasor has established an appropriate defense.   *Williams [v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir. 1994)] (emphasis added) (citing *O'Hare,* 898 F.2d at 1017).   We apply a six-factor balancing test to assess the "totality of the circumstances." *O'Hare,* 898 F.2d at 1017 (citations omitted).   The six *O'Hare* factors are:
>
> (i) the plaintiff's education and business experience;

---

[4] *See, e.g.*, *Christian v. Vought Aircraft Indus., Inc.,* 439 F. App'x 272 (4th Cir. 2011); *Madrid v. Phelps Dodge Corp.,* 211 Fed. Appx. 676, 679 (10th Cir.2006); *Nicklin v. Henderson,* 352 F.3d 1077, 1080 (6th Cir.2003), *cert. denied,* 541 U.S. 1031 (2004); *Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 181 (1st Cir.1995); *Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1367 (2d Cir.1991); *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 522 (3d Cir.1988).

[5] The terms 'waiver' and 'release' appear to be used interchangeably throughout the cited cases. *See High v. E-Sys. Inc.*, 459 F.3d 573, 581 (5th Cir. 2006) ("Our caselaw defines waiver as 'a voluntary or intentional relinquishment of a known right.'") (quoting *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351 (5th Cir. 1991)).

(ii) the amount of time the plaintiff had possession of or access to the agreement before signing it;

(iii) the role of [the] plaintiff in deciding the terms of the agreement;

(iv) the clarity of the agreement;

(v) whether the plaintiff was represented by or consulted with an attorney; and

(vi) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Clayton*, 722 F.3d at 292, 292 n.13.  The Court therefore finds that it may rely entirely upon federal common law in determining whether to enforce the Agreement's release against Peters as it applies to Reliance.

## B.  Validity of Release

The Court initially addresses Reliance's burden to establish several threshold facts.  Here, the parties do not dispute that: 1) Peters signed a release that addresses the claims at issue; or 2) he received adequate compensation (here, $2,500,000).  Assuming a valid release, Peters's pursuit of injunctive relief against Reliance would constitute a breach of said release.   Reliance has therefore met its initial burden, which now switches to Peters to show, under the totality of the circumstances, that the release is invalid.

Peters attempts to demonstrate the invalidity of the release by arguing that Reliance was not a party to the agreement.  Peters further argues that the language of the agreement, which specifically names *some* insurers—while not naming Reliance—is evidence of the signing parties' intent that Reliance should not be included among the

Releasees.  Examining the relevant *O'Hare* factors, it is clear that Peters is unable to make such a showing.

First, there is scant evidence of any facts to suggest that factors (1) through (3) should be decided in either party's favor.  The Court therefore focuses its attention on the remaining three factors:

### 4.  Clarity of the Agreement

The Agreement specifies that 'Releasees' include Averitt and its insurers and indemnitors.  Dkt. 8-2, ¶ I.B.  Under the heading "General Release," the Agreement specifies that Peters, in exchange for consideration, "RELEASE[S], ACQUIT[S], and FOREVER DISCHARGE[S] Releasees of and from any and all past, present and future claims . . . including, but not limited to, all . . . long term disability benefits . . . ." Reliance is the sole provider of Averitt's long term disability insurance.  Dkt. 10, ¶ II.A. To be sure, the Agreement is broad.  However, the entity (the insurer) and the category (long term disability benefits) are both expressly denoted here.  The Court therefore finds that the Agreement is sufficiently clear on the following point: Peters was releasing Averitt and its insurer Reliance from the obligation to pay long term disability benefits in exchange for the consideration received.

Peters points to the Agreement's definition of 'Releasees," which names Averitt's "insurers and indemnitors (specifically including, but not limited to, Lexington Insurance Company, American International Group, Inc.)."  According to Peters, the Agreement's failure to specifically identify Reliance where other insurers are identified in the same paragraph shows the parties' intent that Reliance should not be included among the

Releasees.  Dkt. 9.  However, the Court must give effect to the plain language of the "but not limited to" clause.  This is especially true where, as here, neither of the identified insurers  provided long term disability insurance as did Reliance.

### 5.  Plaintiff's representation by an attorney

This factor is easily demonstrated through the record before the Court.

### 6.  Adequacy of the consideration

Taking the pleadings as true, Peters continues to suffer from traumatic brain injury and post-traumatic stress disorder.  These injuries are described as "serious."  As assembled from Peters's Complaint in Texas state court, his injuries appear serious indeed: Peters was struck and hit with a tractor-trailer travelling at an excessive rate of speed that caused Peters "severe neurological, head, neck, back, shoulder, and other bodily injuries."  Dkt. 8-1, ¶ 6. These injuries to "his body and cognition . . . resulted in physical pain, mental anguish, and other medical problems."  *Id*. at ¶9.  These problems include "severe pain, disfigurement, physical impairment, discomfort, mental anguish and distress" that will, "in all reasonable probability . . . continue indefinitely."  *Id*.  Peters also suffered "a loss of earnings in the past, as well as a loss of future earning capacity . . . and will continue to incur in the future pharmaceutical and medical expenses in connection with his injuries."  *Id*.

The record before the Court does not include the amount of Reliance's periodic long-term disability payments to Peters, medical professionals' estimates of the length of time he would suffer from these injuries, or the dollar amount of medical and pharmaceutical bills that Peters could expect to pay in the future.  The record instead

shows that Peters received $2,500,000 as consideration for signing the general release. Given the sparse record, comparing the $2,500,000 to 'the employee benefits to which the employee was already entitled by contract or law' is a futile exercise. However, the Court can, at the very least, make a broad generalization. Spread over monthly payments for the course of twenty years, the consideration received by Peters would amount to almost $10,500 per month. This amount is almost certainly in excess of his employee benefits. This is especially true because the consideration is guaranteed to his beneficiaries while disability benefits would have ceased upon Peters's death. The Court therefore finds that this final factor weighs in favor of Reliance.

## IV.  Conclusion

Because Peters's pleadings make clear that his claim is barred, Reliance's motion to dismiss is hereby **GRANTED**. Because further amendments would be futile, the Court hereby **ORDERS** that this case is **Dismissed with prejudice**. An order of final judgment will be entered separately.

SIGNED at Galveston, Texas, this 23rd day of February, 2017.

George C. Hanks Jr.
United States District Judge